UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CLARENCE BOGAN, III, ) | CASE NO. 1:08 CV 1727 |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE SOLOMON OLIVER, JR. |
| v. ) | |
| ) | MEMORANDUM OF OPINION |
| KEVIN MCDONOUGH, et al., ) | AND ORDER |
| ) | |
| Defendants. ) | |

Pro se plaintiff Clarence Bogan, III filed this action under 42 U.S.C. §§ 1983, 1986, 1988, 1991, 2000 and "also pursuant to the criminal penalties of Title 18 that concerns tampering with mail-evidence during criminal investigations and prosecutions" against Cuyahoga County Jail Warden Kevin McDonough, Associate Warden Michael Schafer, Warden Ronald L. Shobert, Cuyahoga County Prosecutor John Kosko, and Cuyahoga County Common Pleas Court Judge Jose A. Villanueva. In the complaint, Mr. Bogan contends that the defendants denied him access to the courts, due process, and equal protection, retaliated against him, and subjected him to cruel and unusual punishment. He seeks $ 110,000,000.00 from each defendant, and an order vacating an order issued by Judge Villanueva in a criminal matter currently pending against Mr. Bogan.

**Background**

Mr. Bogan was arrested on charges of drug possession on July 12, 2007. He claims he was taken to the part of the Justice Center assigned to the City of Cleveland where his arrest was processed. Thereafter, he was returned to the Second District Police Station and released forty-two

hours later.

On August 24, 2007, Mr. Bogan was arrested on more serious charges. He was indicted three days later on one count of rape, two counts of kidnaping, and one count of felonious assault. Bond was set at $ 250,000.00. On this occasion, Mr. Bogan did not find his arrest to be the simple procedure he experienced the month before. He contends that he was taken from the police car by a group of officers accompanied by Warden Ronald Shobert and led straight to a segregation cell on the tenth floor of the jail. He claims he was strip searched and required to relinquish his street clothes. He was given a prison jump suit. He first alleges that he was treated in this manner because he called the Warden a derogatory name "the last time ...[he] was [t]here."[1] (Compl. at 2.) He then alleges that he was treated this way because he had been successful in a civil suit against the jail. He contends that Warden Shobert retaliated against him.

During Mr. Bogan's arraignment on the charges of rape, kidnaping and felonious assault, Cuyahoga County Common Pleas Court Judge Jose Villanueva issued an order restricting him from using the telephone and from receiving any mail inside the county jail. A second indictment was filed against Mr. Bogan in October 2007, charging him with two additional counts of rape, three additional counts of kidnaping, one additional count of felonious assault, and aggravated robbery. A similar order was issued in this case.[2] He is permitted to speak only with

---

[1] Mr. Bogan was convicted of gross sexual imposition and assaulting a corrections officer in 2003. Prior to that, he had a criminal conviction from the 1980's. Mr. Bogan states that he made the comment to the warden "the last time...[he] was at the jail"as he "was being returned to prison." (Compl. at 2.) It appears that Mr. Bogan may be referring to an incident that took place in 2003.

[2] The court ordered the Cuyahoga County Sheriff's Department to screen any letter coming out of the county jail from Mr. Bogan. Mr. Bogan was ordered to stop sending letters to Judge Villanueva at home. Cuyahoga County Court of Common Pleas dockets can be viewed at:
(continued...)

counsel of record in his criminal case. He does not fully explain the court's reasoning for issuing this order except to say that it was based on past behavior by him in the jail. He contends that these orders are unconstitutional and an abuse of power by Judge Villanueva. He further contends that his movements within the jail are videotaped, to which he objects as an abuse of power.

Finally, Mr. Bogan states that upon arrival at the jail in August 2007, he was given a medical examination and a psychiatric evaluation. He claims he was charged a $ 10.00 co-pay fee for these services, even though he did not request the appointments. Mr. Bogan asserts that he was denied due process and was the victim of discrimination.

## Analysis

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[3] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

---

[2] (...continued)
http://cpdocket.cp.cuyahogacounty.us/

[3] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

As a threshold matter, plaintiff fails to state a claim for retaliation by jail officials. To state a prima facie case for retaliation, plaintiff must establish that he engaged in protected conduct; that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and that a causal connection exists between the first two elements. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff fails to satisfy each of these criteria.

An inmate has a First Amendment right to file grievances and lawsuits against prison officials. See Noble v. Schmitt, 87 F.3d 157, 162 (6th Cir. 1996). In addition, an inmate may have a First Amendment right under some circumstances to express discontent with law enforcement personnel. To state a constitutional claim, however, the plaintiff must not only show he exercised a First Amendment right, but also must demonstrate that adverse actions were taken against him which were motivated, at least in part by his protected conduct. Thaddeus-X, 175 F.3d at 394. Plaintiff first alleges that after being booked into the jail after his arrest, he was strip searched, deprived of his street clothes and made to wear a jail jumpsuit. There are no facts set forth in the complaint which reasonably suggest these actions were based upon an intent to retaliate against the plaintiff, as opposed to being standard practice for any inmate being booked into the jail.

Mr. Bogan also complains that his telephone access is restricted and his mail is screened. He does not state a specific legal claim. He refers to the restrictions as an unconstitutional abuse of power. At another point in his pleading, he indicates in general that he has been denied due process and access to the courts. Mr. Bogan fails to state a claim for relief under either of these legal theories.

The Fourteenth Amendment is satisfied if a pretrial detainee, like Mr. Bogan, has the

assistance of an attorney during the course of his criminal trial. United States v. Smith, 907 F.2d 42, 44 (6th Cir.1990). There is no specific allegation in the complaint suggesting that Mr. Bogan was denied due process during his criminal proceedings.

To the extent that he is asserting a claim for denial of access to the courts, it is without merit. To state a claim for denial of access to the courts, plaintiff must demonstrate he suffered actual injury as a result of this policy. Lewis v. Casey, 518 U.S. 343, 351 (1996). Furthermore, the injury requirement is not satisfied by just any type of frustrated legal claim. Id. A prison official may be held liable for the deprivation of this First Amendment right only to the extent that his or her actions prevented a prisoner from pursuing or caused the rejection of specific non-frivolous direct appeals, habeas corpus applications, or civil rights actions. Id.; Hadix v. Johnson, 182 F.3d 400, 405 (6th Cir. 1999). "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration."[4] Id. at 355. Mr. Bogan does not state that he was prevented from pursuing a cause of action or a legal claim because of the actions of a defendant. Consequently, he has not stated a claim for denial of access to the courts.

To the extent he was attempting to assert some other claim, it also cannot proceed. Principles requiring generous construction of pro se pleadings are not without limits. See Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985). A complaint must contain either direct or inferential allegations respecting all the

---

[4] The Supreme Court stressed that the First Amendment does not guarantee prisoners the ability to transform themselves into "litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Lewis, 518 U.S. at 355.

material elements of some viable legal theory to satisfy federal notice pleading requirements. See Schied v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988). District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. Beaudett, 775 F.2d at 1278. To do so would "require ...[the courts] to explore exhaustively all potential claims of a pro se plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Id. at 1278. Moreover, plaintiff's failure to identify a particular legal theory in his complaint places an unfair burden on the defendants to speculate on the potential claims that plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action. See Wells v. Brown, 891 F.2d at 594. Even liberally construed, the complaint does not sufficiently state the federal constitutional claim or claims upon which plaintiff intends to base his cause of action.

In addition, Mr. Bogan asks this court to essentially rescind an order issued by Judge Villanueva to screen his mail and limit his telephone access. A federal court must decline to interfere with pending state proceedings involving important state interests unless extraordinary circumstances are present. See Younger v. Harris, 401 U.S. 37, 44-45 (1971). Abstention is appropriate if: (1) the state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal questions. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). Abstention is mandated whether the state court proceeding is criminal, quasi-criminal, or civil in nature as long as federal court intervention "unduly interferes with the legitimate activities of the State." Younger, 401 U.S. at 44.

All three factors supporting abstention are present in this case. The issues presented in the complaint are clearly the subject of a state court criminal matter, which are of paramount state interest. See Younger, 401 U.S. at 44-45. Furthermore, Mr. Bogan has not set forth facts which reasonably suggest the Ohio courts cannot or will not provide an adequate opportunity for him to raise his constitutional claims. Consequently, this court is required to abstain from intervening in the Cuyahoga County Court of Common Pleas proceedings.

Mr. Bogan asserts a general claim for denial of equal protection and violation of the Eighth Amendment. As to his Equal Protection claim, he has stated no facts to support or explain this assertion. It is set forth in the pleading solely as a legal conclusion. Legal conclusions alone are not sufficient to present a valid claim, and this court is not required to accept unwarranted factual inferences. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); see also, Place v. Shepherd, 446 F.2d 1239, 1244 (6th Cir. 1971) (conclusory section 1983 claim dismissed).

Mr. Bogan's Eighth Amendment claim is similarly flawed. An Eighth Amendment claim is stated where a prisoner is denied some element of civilized human existence due to deliberate indifference or wantonness. Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); see also Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Street v. Corrections Corp. of America, 102 F.3d 810, 814 (6th Cir.1996). In sum, this prong of the Eighth Amendment affords protection against conditions of confinement which constitute health threats, but not against those which cause mere discomfort or inconvenience. Hudson, 503 U.S. at 9-10 (requiring extreme or grave deprivation). Plaintiff has not alleged a deprivation which triggers this form of Eighth Amendment scrutiny. An inmate "cannot expect the amenities, conveniences and services of a good hotel." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir.1988); see Thaddeus-

7

X v. Blatter,175 F.3d 378, 405 (6th Cir. 1999). There are no allegations in the complaint which reasonably suggest that Mr. Bogan has been subjected to some extreme deprivation.

Finally, Mr. Bogan claims that the withdrawal of a medical co-pay fee denied him due process. While prisoners may have a protected property interest in the funds in their inmate trust accounts, Campbell v. Miller, 787 F.2d 217, 222 (7th Cir. 1986); Quick v. Jones, 754 F.2d 1521, 1523 (9th Cir. 1985), any process that may be due to the prisoner for the withdrawal of the medical co-payment fee is minimal. Scott v. Angelone, No. 91-16182, 1992 WL 354598, at *2 (9th Cir. Nov. 27, 1992); Gardner v. Wilson, 959 F. Supp. 1224, 1229 ( C.D. Cal. 1997); Reynolds v. Wagner, 936 F. Supp. 1216, 1228 (E.D. Pa. 1996). The withdrawal of medical fees from inmate accounts is not a "taking" of property as it is generally understood because the inmates are receiving something in return. Reynolds, 936 F. Supp. at 1228. Consequently, due process requires no more than notice of the policy and a post-deprivation grievance procedure. Scott, No. 91-16182, 1992 WL 354598, at *2; Gardner, 959 F. Supp. at 1229); Reynolds, 936 F. Supp. at 1228. There is no indication in the complaint that Mr. Bogan was given no notice of the co-payment policy or that he was not given the opportunity to contest the fee through the prison's grievance system. He therefore fails to set forth any allegations which reasonably suggests that he was denied due process.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[5]

---

[5] 28 U.S.C. § 1915(a)(3) provides:

(continued...)

IT IS SO ORDERED.

                                            /s/ SOLOMON OLIVER, JR.
                                            UNITED STATES DISTRICT JUDGE

October 31, 2008

---

[5] (...continued)
An appeal may not be taken <u>in forma pauperis</u> if the trial court certifies that it is not taken in good faith.